**AMERICAN WAREHOUSE CORPORATION, et al v. LANEY & DUKE STORAGE WAREHOUSE CO., et al.**
No. 6981-CC.
Florida Public Service Commission.
December 21, 1966.

Dan R. Schwartz and Sol H. Proctor of Schwartz, Proctor & Bolinger, Jacksonville, for the complainants.

Martin Sack and Martin Sack, Jr., both of Jacksonville, for the defendants.

James L. Graham, Jr., General Solicitor, for the commission staff and the public generally.

Chairman EDWIN L. MASON, Commissioners JERRY W. CARTER and WILLIAM T. MAYO participated in the disposition of this matter.

BY THE COMMISSION.

At the conclusion of the final public hearing on the subject complaint, there was some off-the-record discussion between the commission and counsel for complainants and defendants about briefs and oral arguments, but the record does not reflect anything more than an indication that briefs would be filed at least ten days before oral argument. Since oral argument may now be allowed on petitions for reconsideration under current commission practices, it was felt that this matter was ready for decision without need for further argument.

The commission and its staff have not lightly considered the issues raised herein, as evidenced to some extent by the period of time during which the matter has been under consideration. Counsel for the parties have also been thorough during the course of the two public hearings conducted in Jacksonville in 1964 and in Tallahassee in 1965, and the depositions taken thereafter in both Miami and Tampa. The record, as it now stands, is sufficiently complete without further hearing, and the positions of the parties and their arguments in support of them have been fully and carefully stated.

The complainants in this proceedings are a group of warehouse companies all of which are located in Jacksonville. They shall be referred to herein as the complainants. The defendants are referred to herein as such. Actually, Laney & Duke Storage Warehouse Company, Inc. is the principal defendant and con-

cedes generally that, as a Jacksonville warehouse firm, it has solicited, advertised, and carried on the business of consolidating and shipping goods from Jacksonville to certain points in Florida. This defendant is shown to collect goods for shipment at its warehouse, to load the goods in a trailer or semi-trailer, and then to transport the loaded trailer to a railroad ramp where it is loaded on a railroad flatcar and transported to either Miami, Tampa, Lakeland, St. Petersburg or Clearwater. There, loaded trailers are picked up by an agent of the defendant and the goods distributed to their final destinations within the corporate limits of those cities.

Basically, the complaint contends that Laney & Duke, the defendant, is either a transportation broker, a motor carrier, or a railroad or express company that is operating without regard to the regulatory authority of this commission.

Before considering the issue of whether defendant is a broker or a motor carrier, attention will be given to the question of whether it is operating as a railroad or express company. Section 350.10 defines a railroad company, not only as one that operates a railroad, but also as anyone who owns or operates "any express service or train, or car service, including sleeping car, parlor car and dining car service on any railroad . . ." There is no statutory definition of an express company, but in its generally recognized usage the term has come to be applied primarily to the REA Express Company and secondly to bus express. A characteristic of both is that individual shipments, usually relatively light and small, are moved in conjunction with either the highway or rail transportation of passengers. Thus the shipments are accorded a faster movement, usually at higher rates, on schedules maintained for passenger service. In this way they are distinguished from freight movements in the general sense which move on slower schedules that are devoted exclusively to freight transportation.

While the defendant's operation is not compatible with our understanding of an express service, and while it does not operate a railroad, attention is given to whether it might conceivably be termed a "terminal company." Section 350.10, after defining a railroad, provides that the term railroad shall apply also to ". . .all terminal companies or union depot companies, passenger or freight, whether operating train service or not." The use of the word "terminal," however, in conjunction with "union depot" indicates that the companies intended to be affected are those which in some way provide a service for railroads as well as for users of the railroads. While they might not necessarily engage

in switching operations or maintain the tracks in the terminal area, they would of necessity be located adjacent to a rail terminus or at a railroad station. The defendant is not so located and does not perform any service for the railroad companies.

At this point it is well to consider that from a practical point of view, the operations of the defendant are essentially those of a freight forwarder. While such operations in interstate commerce are subject to regulation by the Interstate Commerce Commission, they are not specifically regulated in Florida. Our transportation broker law, section 323.31, Florida Statutes, would not cover a freight forwarder who used rail service entirely because transportation of property by rail is not subject to regulation under chapter 323. The broker definition in section 323.01 (17) intends that the transportation that is brokered must be motor carrier transportation and the broker must not himself be a motor carrier or a carrier's agent. In section 323.31(1) it is stated that ". . . . the provisions of this section shall not apply to any motor carrier or to a bona fide employee or agent of such motor carrier, so far as concerns transportation to be furnished wholly by such carrier or jointly with other motor carriers or with a common carrier by railroad, express, or water."

Since Laney & Duke does provide for-hire motor transportation at both ends of the movement by rail, it would not, therefore, be exempt from the broker law on the premise that it brokered pure rail transportation which would not be subject to regulation under chapter 323, our Motor Carrier Act. On the other hand, the defendant would not be classified as a motor transportation broker since it provides that itself to the extent necessary for pickup and delivery.

Section 323.01(7), Florida Statutes, defines a motor carrier as a person or concern which controls, operates, or manages, "any motor propelled vehicle not usually operated on or over fixed rails, used in the business of transporting persons or property for compensation over any public highway in this state . . ."

In the same section, paragraph (5) defines public highway as meaning ". . . every public street, road or highway in this state . . ." The defendant is, therefore, controlling, operating or managing motor vehicles used in the business of transporting property for compensation over public streets of Jacksonville, Tampa, Lakeland, and Miami and does come within the definition of a motor carrier. As such, defendant is subject to the Motor Carrier Act unless in some way exempted.

Section 323.29, Florida Statutes, sets out the exemptions from the terms of chapter 323. Among them is the following — "There shall also be exempted from the provisions of this chapter and from commission jurisdiction and control, persons operating motor vehicles within the corporate limits of any city or town or the adjoining suburban territory, or between cities and towns whose boundaries adjoin, where such business of carriage is regulated by the legislative body of such cities or towns." The question of whether or not such business of carriage is exempt from this commission's jurisdiction and control depends upon the specific situation in any particular city or town. One city may regulate such business of carriage, another may not.

Historically this commission has never attempted to exercise such jurisdiction as it may have over local motor carriers. To determine the existence or extent of local regulation, the commission would have to undertake an investigation on a statewide basis, as it could not justify limiting such an investigation to selected cities or towns. Then, too, about the time the commission had completed its investigations and determined that it did have jurisdiction in some particular city or town, such jurisdiction could easily be eliminated by the adoption of appropriate local regulation.

While the commission undoubtedly does have jurisdiction over operations by motor carriers in some cities and towns of the state, under the present status of the law, it would not be feasible to attempt to exercise such jurisdiction.

While a slightly better case might be made for our regulating the inter-city type of operation engaged in by the defendant, this problem does not seem to have bothered the drafters of this exemption. They exempt motor vehicle operations between two cities whose boundaries adjoin with the apparent belief that the type of regulation they had in mind to be performed by the legislative bodies of the cities could be performed by two of such bodies as well as by one.

In the final analysis, the results of defendant's operations are, from the shipper's point of view, the same that would be achieved by use of a motor carrier. The goods to be shipped from Jacksonville to Miami, for example, are removed from defendant's warehouse by truck and are ultimately delivered in Miami by truck. The shipper deals only with defendant, paying it for the full transportation service, and could well be oblivious of the fact that for almost all of the distance between Jacksonville

and Miami his goods were moving by rail. It is obviously the regulated motor carrier that is suffering from the loss of business occasioned by defendant's operation. While one of the main purposes to be served by our motor carrier act is to assure that a certificated motor carrier who performs adequately in meeting the needs of the public will be at least partially protected from competition of other motor carriers offering the same kind of service, it must be admitted that in our regulatory scheme the certificated motor carrier is not protected from the kind of competition encountered here.

It is therefore ordered that the complaint filed herein be and the same is hereby dismissed.

Commissioner JERRY W. CARTER dissents.